IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| KELLY MARIE ROSE ) | |
| ) | |
| v. ) | No. 3:18-0530 |
| ) | |
| NANCY A. BERRYHILL ) | |
|     Acting Commissioner of ) | |
|     Social Security ) | |

**To:** The Honorable Aleta A. Trauger, District Judge

# R E P O R T A N D R E C O M M E N D A T I O N

Plaintiff filed this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of the final decision of the Social Security Administration ("Commissioner"), denying Plaintiff's claim for Supplemental Security Income ("SSI") as provided under Title XVI of the Social Security Act ("the Act"). The case is currently pending on Plaintiff's motion for judgment on the administrative record (Docket Entry ("DE") 18), to which Defendant has responded. DE 19. This matter has been referred to the undersigned pursuant to 28 U.S.C. § 636(b) for initial consideration and a report and recommendation. *See* DE 4.

Upon review of the administrative record as a whole and consideration of the parties' filings, the undersigned Magistrate Judge respectfully recommends that Plaintiff's motion (DE 18) be **DENIED**.

## I.    INTRODUCTION

Plaintiff filed an application for SSI on August 19, 2014, in which she alleged that she was unable to work because of a heart condition, diabetes, degenerative disc disease, high blood

1

pressure, and high cholesterol. *See* Transcript of the Administrative Record (DE 10) at 66, 106.[1] She alleged a disability onset date of March 5, 2014. AR 66.

Plaintiff's applications were denied initially and upon reconsideration. AR 66, 82. Pursuant to her request for a hearing before an administrative law judge ("ALJ"), Plaintiff appeared with counsel and testified at a hearing before ALJ Elizabeth P. Neuhoff on March 15, 2017. AR 30. On June 9, 2017, the ALJ denied the claim. AR 7-9. The Appeals Council denied Plaintiff's request for review of the ALJ's decision (AR 1-3), thereby making the ALJ's decision the final decision of the Commissioner. This civil action was subsequently filed, and the Court has jurisdiction. 42 U.S.C. § 405(g).

## II. THE ALJ FINDINGS

The ALJ made the following enumerated findings as part of the administrative decision:

1. The claimant has not engaged in substantial gainful activity since August 19, 2014, the application date (20 CFR 416.971 *et seq.*).

2. The claimant has the following severe impairments: (1) ischemic heart disease, (2) mild to moderate lumbar spine degenerative disc disease, and (3) obesity (416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

4. After careful consideration of the entire record, the undersigned finds that the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b). Specifically, she can lift and carry twenty pounds on occasion and ten pounds frequently; sit six hours total; stand and walk four hours total; will require use of a hand held device for long distance walking (defined as more than 500 feet) and for walking on uneven terrain; can never climb ladders, ropes or scaffolds; can occasionally perform all other postural

---

[1] The Transcript of the Administrative Record is referenced by the abbreviation "AR" followed by the corresponding page number(s) as numbered in the large black Bates stamps on the bottom right corner of each page.

activities; and should avoid even moderate exposure to workplace hazards such as unprotected heights and dangerous moving machinery.

5. The claimant is unable to perform any past relevant work (20 CFR 416.965).

6. The claimant was born on August 26, 1985 and was 28 years old, which is defined as a younger individual age 18-49, on the date the application was filed (20 CFR 416.963).

7. The claimant has at least a high school education and is able to communicate in English (20 CFR 416.964).

8. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969, 416.969(a))

10. The claimant has not been under a disability, as defined in the Social Security Act, since August 19, 2014, the date the application was filed (20 CFR 404.920(g)).

AR 12-23.

### III. REVIEW OF THE RECORD

The parties and the ALJ have thoroughly summarized and discussed the medical and testimonial evidence of the administrative record. Accordingly, the Court will discuss those matters only to the extent necessary to analyze the parties' arguments.

### IV. DISCUSSION AND CONCLUSIONS OF LAW

#### A. Standard of Review

The determination of disability under the Act is an administrative decision. The only questions before this Court upon judicial review are: (i) whether the decision of the Commissioner is supported by substantial evidence, and (ii) whether the Commissioner made legal errors in the process of reaching the decision. 42 U.S.C. § 405(g). *See Richardson v. Perales*, 402 U.S. 389,

3

Case 3:18-cv-00530   Document 20   Filed 06/21/19   Page 3 of 19 PageID #: 1377

401 (1971) (adopting and defining substantial evidence standard in context of Social Security cases); *Kyle v. Comm'r of Soc. Sec.*, 609 F.3d 847, 854 (6th Cir. 2010). The Commissioner's decision must be affirmed if it is supported by substantial evidence, "even if there is substantial evidence in the record that would have supported an opposite conclusion." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003); *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999). Substantial evidence is defined as "more than a mere scintilla" and "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401 (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S. Ct. 206, 83 L. Ed. 126 (1938)); *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007); *LeMaster v. Weinberger*, 533 F.2d 337, 339 (6th Cir. 1976) (quoting Sixth Circuit opinions adopting language substantially similar to that in *Richardson*).

The Court's review of the Commissioner's decision is limited to the record made in the administrative hearing process. *Jones v. Secretary*, 945 F.2d 1365, 1369 (6th Cir. 1991). A reviewing court may not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility. *See, e.g.*, *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984) (citing *Myers v. Richardson*, 471 F.2d 1265, 1268 (6th Cir. 1972)). The Court must accept the ALJ's explicit findings and determination unless the record as a whole is without substantial evidence to support the ALJ's determination. *See, e.g.*, *Houston v. Sec'y of Health & Human Servs.*, 736 F.2d 365, 366 (6th Cir. 1984).

### B. Determining Disability at the Administrative Level

The claimant has the ultimate burden of establishing an entitlement to benefits by proving her "inability to engage in any substantial gainful activity by reason of any medically determinable

4

physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The asserted impairment(s) must be demonstrated by medically acceptable clinical and laboratory diagnostic techniques. *Id.* §§ 423(d)(3) and 1382c(a)(3)(D). "Substantial gainful activity" not only includes previous work performed by the claimant, but also, considering the claimant's age, education, and work experience, any other relevant work that exists in the national economy in significant numbers regardless of whether such work exists in the immediate area in which the claimant lives, or whether a specific job vacancy exists, or whether the claimant would be hired if she applied. 42 U.S.C. § 423(d)(2)(A).

In the proceedings before the Social Security Administration, the Commissioner must employ a five-step, sequential evaluation process in considering the issue of the claimant's alleged disability. *See Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001); *Abbot v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). First, the claimant must show that she is not engaged in "substantial gainful activity" at the time disability benefits are sought. *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 539 (6th Cir. 2007); 20 C.F.R. § 416.920(a)(4)(i). Second, the claimant must show that she suffers from a severe impairment that meets the 12-month durational requirement. *Id.* § 416.920(a)(4)(ii). *See also Edwards v. Comm'r of Soc. Sec.*, 113 F. App'x 83, 85 (6th Cir. 2004). Third, if the claimant has satisfied the first two steps, the claimant is presumed disabled without further inquiry, regardless of age, education or work experience, if the impairment at issue either appears on the regulatory list of impairments that are sufficiently severe as to prevent any gainful employment or equals a listed impairment. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. § 416.920(d). A claimant is not required to show the existence of a listed impairment in order to be found disabled, but such showing results in an automatic finding

of disability that ends the inquiry. *See Combs, supra*; *Blankenship v. Bowen*, 874 F.2d 1116, 1122 (6th Cir. 1989).

If the claimant's impairment does not render her presumptively disabled, the fourth step evaluates the claimant's residual functional capacity in relationship to her past relevant work. *Combs, supra.* "Residual functional capacity" ("RFC") is defined as "the most [the claimant] can still do despite [her] limitations." 20 C.F.R. § 416.945(a)(1). In determining a claimant's RFC, for purposes of the analysis required at steps four and five, the ALJ is required to consider the combined effect of all the claimant's impairments, mental and physical, exertional and nonexertional, severe and nonsevere. *See* 42 U.S.C. §§ 423(d)(2)(B), (5)(B); *Foster v. Bowen*, 853 F.2d 483, 490 (6th Cir. 1988). At the fourth step, the claimant has the burden of proving an inability to perform past relevant work or proving that a particular past job should not be considered relevant. *Cruse*, 502 F.3d at 539; *Jones*, 336 F.3d at 474. If the claimant cannot satisfy the burden at the fourth step, disability benefits must be denied because the claimant is not disabled. *Combs*, *supra*.

If a claimant is not presumed disabled but shows that past relevant work cannot be performed, the burden of production shifts at step five to the Commissioner to show that the claimant, in light of the claimant's RFC, age, education, and work experience, can perform other substantial gainful employment and that such employment exists in significant numbers in the national economy. *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (quoting *Walters v. Comm'r of Soc. Sec.*, 402 F.3d 525, 529 (6th Cir. 1997)). *See also Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). To rebut a *prima facie* case, the Commissioner must come forward with proof of the existence of other jobs a claimant can perform. *Longworth*, 402 F.3d at 595. *See also Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 528 (6th Cir. 1981), *cert.*

*denied*, 461 U.S. 957, 103 S. Ct. 2428, 77 L. Ed. 2d 1315 (1983) (upholding the validity of the medical-vocational guidelines grid as a means for the Commissioner of carrying his burden under appropriate circumstances). Even if the claimant's impairments prevent the claimant from doing past relevant work, if other work exists in significant numbers in the national economy that the claimant can perform, the claimant is not disabled. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009). *See also Tyra v. Sec'y of Health & Human Servs.*, 896 F.2d 1024, 1028-29 (6th Cir. 1990); *Farris v. Sec'y of Health & Human Servs.*, 773 F.2d 85, 88-89 (6th Cir. 1985); *Mowery v. Heckler*, 771 F.2d 966, 969-70 (6th Cir. 1985).

If the question of disability can be resolved at any point in the sequential evaluation process, the claim is not reviewed further. 20 C.F.R. § 416.920(a)(4).

### C. The ALJ's Five-Step Evaluation of Plaintiff

In the instant case, the ALJ resolved Plaintiff's claim at step five of the five-step process. The ALJ found that Plaintiff met the first two steps but determined at step three that Plaintiff was not presumptively disabled because she did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. At step four, the ALJ found that Plaintiff was unable to perform any past relevant work. At step five, the ALJ found that Plaintiff's RFC allowed her to perform a range of light work with express limitations to account for her severe impairments, and that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform despite such limitations. AR 12-23.

### D. Plaintiff's Assertions of Error

Plaintiff contends that the ALJ erred by (1) rejecting the opinion of the treating physician, (2) improperly evaluating her credibility, and (3) assigning an invalid RFC. DE 18-1 at 6, 13, 17.

7

Plaintiff therefore requests that this case be reversed, and benefits awarded, or, alternatively, remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further consideration. *Id.* at 18.

Sentence four of 42 U.S.C. § 405(g) states the following:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.

Notably, a court may reverse an administrative decision and award benefits only "if the decision is clearly erroneous, proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking." *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985). Such action also requires that all essential factual issues have been resolved and that the record adequately establishes a claimant's entitlement to benefits. *Faucher v. Secretary*, 17 F.3d 171, 176 (6th Cir. 1994). *See also Newkirk v. Shalala,* 25 F.3d 316, 318 (1994).

**1. The ALJ's Evaluation of the Treating Physician's Opinion.**

In application of the so-called "treating physician rule," the ALJ must give controlling weight to the opinion of a treating physician regarding the functional limitations caused by any physical or mental impairments if that opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 416.927(c)(2). If the opinion is not given controlling weight, the ALJ must determine the amount of weight it receives based on a variety of factors, which include the length, frequency, nature, and extent of the treatment relationship, whether the physician is a specialist, and the degree to which the opinion is consistent with the record as a whole. *Gayheart v. Comm'r of Soc. Sec.,* 710 F.3d 365, 376 (6th Cir. 2013) (internal citation omitted). The ALJ is required to provide "good reasons" that are "sufficiently specific to make clear to any subsequent reviewers" the basis for such weight allocation. *Johnson-Hunt v. Comm'r of Soc. Sec.*, 500 F.

App'x 411, 418 (6th Cir. 2012) (quoting *Helm v. Comm'r of Soc. Sec.,* 405 F. App'x 997, 1000 (6th Cir. 2011)).[2]

The record contains two opinions from Dr. Alicia Hall, who treated Plaintiff on numerous occasions in 2013 and 2014. AR 779-822. During the initial appointment in July of 2013, Dr. Hall diagnosed Plaintiff with back pain, knee pain, osteoarthritis, and obesity. AR 819. One month later, Plaintiff returned with complaints of both general and sinus-related headaches, as well as radiating neck pain. AR 811. Plaintiff was seen for depression and anxiety on March 13, 2014, although a physical examination produced normal findings, including no pain in her muscles or joints, no range of motion limitations, and numbness, with her back pain being described as "stable." AR 792, 809. Notably, Plaintiff advised that she continued to work and attend school. AR 791.

Dr. Hall saw Plaintiff again on April 24, 2014 to monitor her hypertension and depression, with Plaintiff expressing a "vast improvement" in her condition. AR 789. Plaintiff complained of intermittent numbness in her lower extremities but noted that her back pain was "stable" and that she continued to exercise regularly. AR 789. There was also no evidence of numbness or a decreased range of motion in her extremities. AR 789. She returned four weeks later with complaints of left knee pain and "mild" swelling after injuring herself on a stationary exercise bike, although Dr. Hall recommended only that Plaintiff ice the knee as needed and "increase [her] exercise and dietary efforts." AR 787-88. She was seen again on July 31, 2014 to obtain medication "for heart disease," at which time she also reported that she had injured her neck approximately two weeks earlier while lifting her disabled father. AR 786. Dr. Hall diagnosed her with a cervical neck strain and recommended "ice, heat, [and] stretches." AR 786.

---

[2] The treating physician rule applies to all Social Security claims filed before March 27, 2017, such as the instant one. *See* 82 Fed. Reg. 15263-01, 2017 WL 1105348 (Mar. 27, 2017).

Plaintiff did not return until November 5, 2014, at which time she requested that Dr. Hall complete paperwork required for her application for disability benefits. AR 785. During this final encounter with Dr. Hall, she reported difficulty walking without a cane and standing for more than 30 minutes, as well as "unbearable" pain after sitting for more than two hours. AR 785. Plaintiff also claimed that she was unable to bend, reach, or even lie down without experiencing pain, and that the pain was significant enough to disrupt her sleep. AR 785. After noting a limited range of motion and paraspinous tenderness on the lumbar spine, Dr. Hall diagnosed Plaintiff with "back pain-debilitating." AR 785.

Dr. Hall's first opinion comes in the form of a medical source statement ("MSS") alleging that Plaintiff is unable to lift or carry more than 10 pounds, sit for more than four hours, stand for more than two hours, or walk for more than two hours during an eight-hour workday. AR 824-25. Dr. Hall also concluded that Plaintiff could only "occasionally" push and pull and that she required the use of a cane to ambulate. AR 825-26.[3] Confusingly, Dr. Hall additionally claimed that these functional limitations were first present in March of 2014 following a coronary event, but also emphasized that Plaintiff experienced her "[first] herniated disc at age 18 []." AR 829.

Dr. Hall then completed a separate form statement related specifically to Plaintiff's cardiac condition ("cardiac MSS") in which she opined that Plaintiff was incapable of performing "low stress" work, lifting more than 10 pounds, crouching, squatting, or climbing ladders. AR 832-33. She further limited Plaintiff to "rare" twisting, stooping, and climbing stairs, as well as breaks for at least one hour per every hour of work performed. AR 832.[4] Dr. Hall also stated that Plaintiff's

---

[3] An occasional basis is defined as up to one-third of an eight-hour workday. AR 828.

[4] Rare is defined as "1% to 5%" of an eight-hour workday. AR 833.

10

physical symptoms caused "emotional difficulties," which she identified as "mild depression and anxiety," and opined that Plaintiff's condition would cause her to be "off task" for 25% or more of each workday. AR 832, 834.

The ALJ accorded "limited weight" to these two opinions based on the following reasoning:

> [Dr. Hall's opinion] is inconsistent with other evidence in the record including the medical opinions of the State agency consultants .... [Dr. Hall] did not provide any references to any objective signs in support of her opinion. She further provides no basis for her opinion why the claimant would need so many breaks each day, be off task so much, or be absent so often. Indeed, her opinion is inconsistent with the substantial other examinations performed by her primary care provider throughout 2016 ... and being repeatedly observed ambulating normally .... The extreme limitations that [Dr. Hall] opines to are also inconsistent with the claimant's ability to attend school and spend "several hours" at a time shopping[.]

AR 20. Plaintiff alleges that such weight allocation is not supported by substantial evidence. She cites imaging studies performed in January of 2014 showing degenerative changes in her lumbar spine and various other diagnoses listed in Dr. Hall's treatment records. DE 18-1 at 7-8. Plaintiff also emphasizes Dr. Hall's status as a treating physician, which she argues puts Dr. Hall in the best position to provide an accurate assessment of her functional limitations, in contrast to the two state agency physicians whose opinions were given "great weight" (AR 20) despite having never examined her. *Id*. at 8, 9.

The imaging study in question involves an MRI that revealed a concentric bulge and posterior annular tear at the L4-5 level, accompanied by "moderate" lateral recess effacement and "mild" foraminal narrowing. AR 841-42. Contrary to the ALJ's claim that the MSS fails to include a reference to "objective signs" (AR 20), Dr. Hall noted that her assessment was based in part on this MRI, which purportedly showed a "near-obliterated vertebra in lumbar spine." AR 824. The ALJ was certainly permitted, and indeed required, to examine and quantify the extent to which the

11

treating physician supported her opinion. *See* 20 C.F.R. § 416.927(c)(3) ("The more a medical source presents relevant evidence to support a medical opinion, particularly medical signs and laboratory findings, the more weight we will give that medical opinion."). However, contrary to the ALJ's statement otherwise, Dr. Hall clearly made a reference, however brief, to an objective "sign." *See* 20 C.F.R. § 416.902(l) (defining "signs" as "one or more anatomical, physiological, or psychological abnormalities that can be observed, apart from your statements (symptoms). Signs must be shown by medically acceptable clinical diagnostic techniques.").

Nevertheless, this is not the only factor weighed under the treating physician rule, nor does the ALJ's failure to recognize Dr. Hall's passing MRI citation necessarily doom the administrative opinion. *See Hall v. Comm'r of Soc. Sec.*, 148 F. App'x 456, 464 (6th Cir. 2005) ("[I]t is critical that, when reviewing the ALJ's reasoning for this purpose, we remember the goals of the procedural safeguard. We are reviewing the ... decision to see if it implicitly provides sufficient reasons for the rejection of [the treating physician's] opinion regarding [the claimant's condition]."). Significantly, the ALJ provided a detailed discussion of physical examinations that severely undermine Dr. Hall's opinions, including remarkably mild findings and an absence of back pain well after the opinions were rendered. AR 17-20, 896, 1093-94. Plaintiff continued to exhibit a normal range of motion and normal strength with normal ambulation and no musculoskeletal symptoms throughout 2015. AR 1251, 1273-74. In September of 2016, a provider diagnosed Plaintiff with lower back pain that was "unlikely to resolve without weight loss." AR 1204. During her last documented visit with a provider in January of 2017, Plaintiff was again diagnosed with mere "low back pain" after a physical examination revealed no problems with muscle strength or tone and a normal gait and station. AR 1188. The subject provider, who Plaintiff described as her primary care physician (AR 48), even encouraged Plaintiff to "partake[e] in

12

regular aerobic exercise" (AR 1188), a recommendation that tends to support the ALJ's decision to discount Dr. Hall's opinions. *See Blaim v. Comm'r of Soc. Sec.,* 595 F. App'x 496, 499 (6th Cir. 2014) ("Even the mildness of [the claimant's] treatment—mostly pain medication, weight loss, and exercise—suggested that [her] ailments were comparatively mild.") (citing *Villarreal v. Sec'y of Health & Human Servs.,* 818 F.2d 461, 463 (6th Cir. 1987)).

Plaintiff nonetheless contends that the ALJ erred by elevating the opinions of two non-examining state agency physicians over those provided by Dr. Hall since the latter actually treated Plaintiff. DE 18-1 at 10. Yet there is no requirement that a treating provider's opinion be accorded greater weight solely based on the existence of a treating relationship with the claimant. To the contrary, it is well within the ALJ's purview to grant more weight to the opinion of a non-examining provider in appropriate circumstances. *Brooks v. Comm'r of Soc. Sec.*, 531 F. App'x 636, 642 (6th Cir. 2013).

Plaintiff additionally suggests that the ALJ's weight allocation warrants reversal because the state agency physicians did not have access to evidence that was entered into the administrative record after their opinions were issued. DE 18-1 at 10. This, too, is a fallacious argument given that there "is no categorical requirement that the non-treating source's opinion be based on a complete or more detailed and comprehensive case record. The opinions need only be supported by evidence in the case record." *Helm v. Comm'r of Soc. Sec. Admin.*, 405 F. App'x 997, 1002 (6th Cir. 2011). The Sixth Circuit has instead held that the existence of ongoing treatment notes following the issuance of opinions from non-examining state physicians warrants "some indication that the ALJ at least considered these facts before giving greater weight to an opinion that is not based on a review of a complete case record." *Blakley*, 581 F.3d at 409. The ALJ took precisely such steps in her opinion by acknowledging Plaintiff's continued treatment and concluding that

13

such evidence was not incongruent with the state physicians' opinions. AR 20. The Court also notes that one state physician conducted his review of Plaintiff's medical records nearly nine months after Dr. Hall's final examination (AR 93), thus arguably providing the state physician with a more complete picture of Plaintiff's condition. AR 1230-81.

In addition to the foregoing, the ALJ discussed the inconsistency of Dr. Hall's opinions with Plaintiff's reported activities, which included attending school, caring for numerous children, and shopping for "several hours" at a time (AR 20, 253), as was appropriate. *See Miller v. Comm'r of Soc. Sec.*, 524 F. App'x 191, 194 (6th Cir. 2013) (holding that claimant's ability to engage in "significant daily activities" was proper consideration in weighing a treating physician's opinion). The ALJ also highlighted to the conservative nature of Plaintiff's ongoing treatment (AR 17, 19), which similarly bolsters the ALJ's decision to discount the validity of Dr. Hall's findings. *See Branson v. Comm'r of Soc. Sec.*, 539 F. App'x 675, 678 (6th Cir. 2013) (holding that conservative treatment "suggests the absence of a disabling condition"). Plaintiff provides no argument on this front, but instead emphasizes her "long-standing treating relationship" with Dr. Hall (DE 18-1 at 12), a circumstance that, as discussed *supra*, fails to demonstrate the existence of a reversible error. This assertion of error is therefore rejected.

## 2. Credibility finding.

Plaintiff next argues that the ALJ failed to properly evaluate her credibility. DE 18-1 at 14. Relying on Social Security Ruling ("SSR") 96-7p, 1996 WL 374186 (July 2, 1996), Plaintiff argues that that the ALJ failed to include specific reasons for finding that her allegations regarding the severity of her symptoms were not entirely consistent with the evidence of record. DE 18-1 at 17.

Plaintiff's argument is unavailing for multiple reasons. First, SSR 96-7p was rescinded one year before the administrative hearing took place, thus making it inapplicable to the current matter. It was replaced by SSR 16-3p, 2016 WL 1119029 (March 16, 2016), which directs the ALJ to consider a claimant's "statements about the intensity, persistence, and limiting effects of the symptoms," and "evaluate whether the statements are consistent with objective medical evidence and other evidence." *Id*. at *6. SSR 16-3p specifically eliminated the term "credibility," *id*. at 2, although relevant case law pertaining to this term that predates SSR 16-3p remains applicable. *See Pettigrew v. Berryhill*, No. 1:17-cv-01118, 2018 WL 3104229, at *14, n.14 (N.D. Ohio June 4, 2018), *report and recommendation adopted*, 2018 WL 3093696 (N.D. Ohio June 22, 2018).

Regardless, Plaintiff's sole contention is that the ALJ improperly found that she "repeatedly denie[d] chest pain and back pain" throughout the record (AR 19), which she underscores by identifying several times during which such complaints were lodged. DE 18-1 at 15-16. This is a facile argument, however, as it ignores the ALJ's reasonable emphasis on the tendency of Plaintiff's symptoms to "wax and wane." AR 19. Indeed, the ALJ specifically acknowledged Plaintiff's numerous complaints of chest and back pain throughout her opinion while noting several other instances, namely during the relevant time period in September 2014, December 2014, and April 2015, during which Plaintiff denied any such symptoms. AR 16-18. The Court finds no error in such analysis.

Plaintiff also fails to address any of the daily activities cited by the ALJ in her consideration of Plaintiff's allegations, which included assisting her disabled father and taking care of five different children for five days per week. AR 19, 1286. Such evidence bolsters the ALJ's adverse finding. *See Staples v. Berryhill*, No. 3:13-cv-1031, 2017 WL 1364671, at *8 (M.D. Tenn. Apr. 14, 2017) (noting that claimant's self-reported activities of daily living were inconsistent with her

15

allegations of significant functional limitations). The ALJ also referenced blatant contradictions between Plaintiff's testimony at the administrative hearing and the explanation she provided in her application for benefits as to why she left previous employment, as well as inconsistencies concerning her ability to complete household chores (AR 40-41, 49-50), all of which further supports the ALJ's assessment. *See Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 392 (6th Cir. 2004) (holding than ALJ properly discounts a claimant's allegations of disabling pain when she "finds contradictions among the medical reports, claimant's testimony, and other evidence").

The Court is not permitted to disturb an ALJ's findings regarding a claimant's subjective allegations of disabling pain "absent compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001). Plaintiff points only to evidence that the ALJ specifically discussed in her evaluation of Plaintiff's allegations, which is insufficient to overturn her conclusion. *See Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 714 (6th Cir. 2012) ("As long as the ALJ cited substantial, legitimate evidence to support his factual conclusions, we are not to second-guess.") (citing *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007)). This assertion of error must therefore be rejected.

### 3. RFC

Plaintiff's final assertion does not allege an actual error, but instead describes the ALJ's findings at steps four and five of the evaluation process. DE 18-1 at 17-18. This absence of a discernible argument likely constitutes waiver. *See Holmes v. Comm'r of Soc. Sec.*, No. 1:12-cv-324, 2013 WL 6094629, at *7 (E.D. Tenn. Nov. 20, 2013) (noting that the court is "under no obligation to scour the record for errors not identified by the claimant"). However, Plaintiff's emphasis on the opinions of the state agency physicians suggests that she finds fault with the ALJ's decision to deviate from their conclusion that she is limited to "sedentary" work despite assigning both opinions "great weight." AR 20.

16

Case 3:18-cv-00530 Document 20 Filed 06/21/19 Page 16 of 19 PageID #: 1390

The state agency physicians who reviewed Plaintiff's medical records each stated in their respective reports that she would be limited to sedentary work (AR 80-81, 94-95), a classification that restricts an individual to lifting no more than 10 pounds at a time and only occasionally lifting or carrying small items such as files and small tools. 20 C.F.R. § 416.967(a).[5] Sedentary work also dictates that the individual stand or walk for no more than two hours per eight-hour workday. SSR 83-10, 1983 WL 31251, at *5 (January 1, 1983). Yet the physicians actually completed RFC assessments that more closely resemble a reduced range of work under the "light work" designation (AR 74-76, 91-93), which involves lifting no more than 20 pounds at one time and frequently lifting or carrying up to 10 pounds, 20 C.F.R. § 416.967(b), although they additionally opined that Plaintiff would be limited to standing and/or walking for just four hours per workday. AR 74, 92. Regardless, the opinions clearly do not include restrictions that would limit Plaintiff to exclusively sedentary work.

During the administrative hearing, the ALJ questioned a vocational expert ("VE") as to the availability of jobs for a hypothetical claimant with the restrictions delineated by the state physicians. AR 60-62. The VE provided multiple examples of jobs that would be available to such a claimant, including counter clerk, information clerk, and furniture rental consultant. AR 61-62. Based on this testimony, the ALJ appropriately incorporated the proffered restrictions into the RFC (AR 14-15). *See Smith v. Halter*, 307 F.3d 377, 378 (6th Cir. 2001) ("A [VE's] testimony concerning the availability of suitable work may constitute substantial evidence where the testimony is elicited in response to a hypothetical question that accurately sets forth the plaintiff's

---

[5] "Occasionally" is defined as "occurring from very little up to one-third of the time." SSR 83-10, 1983 WL 31251, at *5 (January 1, 1983).

17

physical and mental impairments.").[6] It is therefore irrelevant that the state physicians' identification of "sedentary" work conflicts with the specific limitations included in their respective assessments. *See White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 288 (6th Cir. 2009) (rejecting claimant's argument that ALJ erred by relying on VE testimony based on claimant's failure to "show that the ALJ's hypothetical was an inaccurate representation of [the claimant's] functional limitations").

Finally, to the extent that Plaintiff suggests that the ALJ erred by employing an RFC that differed slightly from those proffered by the state physicians, this argument is rejected. It is axiomatic that the ALJ, and not a physician, determines a claimant's ability to perform work-related activities. *Nejat v. Comm'r of Soc. Sec.*, 359 F. App'x 574, 578 (6th Cir. 2009). The ALJ is not required to adopt a state physician's opinion "verbatim" or incorporate that physician's limitations "wholesale" even if the opinion is accorded great weight. *Reeves v. Comm'r of Soc. Sec.*, 618 F. App'x 267, 275 (6th Cir. 2015). Plaintiff fails to identify any of the purported differences between the RFC and the state physicians' opinions, nor does she explain how the ALJ's decision to include their proposed limitations in the RFC constitutes error, as is her burden. *See Peterson v. Comm'r of Soc. Sec.*, 552 F. App'x 533, 540 (6th Cir. 2014) (noting that the

---

[6] Of note, each of these jobs requires a "sit/stand option," which was discussed during the administrative hearing. AR 61. The ALJ failed, however, to explicitly include the sit/stand option in the RFC despite discussing its necessity to the identified jobs elsewhere in her opinion. AR 22. Plaintiff does not challenge this aspect of the RFC, nor did she cross-examine the VE during the hearing regarding the sit/stand option, thereby waiving any argument regarding its applicability. *See Louden v. Comm'r of Soc. Sec.*, 507 F. App'x 497, 499 (6th Cir. 2012) (noting that the claimant's attorney "had the opportunity, but failed to cross-examine the vocational expert" regarding the consistency of the proffered testimony with the provisions of the Dictionary of Occupational Titles). Therefore, to the extent the ALJ erred by not explicitly including the sit/stand option in the RFC, the finds that is a harmless omission.

claimant must "demonstrate that the ALJ's determination that [she] was not disabled is not supported by substantial evidence"). This assertion of error is therefore rejected.

## V. RECOMMENDATION

For the above stated reasons, it is recommended that Plaintiff's motion for judgment on the administrative record (DE 18) be DENIED and the Commissioner's decision be AFFIRMED.

ANY OBJECTIONS to this Report and Recommendation must be filed within fourteen (14) days of service of this Report and Recommendation and must state with particularity the specific portions of this Report and Recommendation to which objection is made. Fed. R. Civ. P. 72(b)(2). Any responses to objections to this Report and Recommendation must be filed within fourteen (14) days of the filing of the objections. *Id.*; M.D. Tenn. R. 72.01(b). Failure to file specific written objections within the specified time can be deemed to represent a waiver of the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985); *Cowherd v. Milton*, 380 F.3d 909, 912 (6th Cir. 2004) (*en banc*).

BARBARA D. HOLMES
United States Magistrate Judge